**Scott and Kathleen KILLPACK, Respondents,**

v.

**FARM BUREAU TOWN & COUNTRY INSURANCE CO., Appellant.**

**Scott and Kathleen KILLPACK, Appellants,**

v.

**FARM BUREAU TOWN & COUNTRY INSURANCE CO., Respondent.**

Nos. WD 47308, WD 47343.

Missouri Court of Appeals, Western District.

July 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied Oct. 26, 1993.

Edward C. Clausen, Jefferson City, for appellant/respondent.

John Roark, Columbia, for respondents/appellants.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

Appellant/cross-respondent, Farm Bureau Town & Country Insurance Company of Missouri (Farm Bureau), issued a policy of automobile insurance to respondents/cross-appellants, Scott Killpack and Kathleen Killpack. While operating his insured automobile, Scott Killpack was injured in a collision which was caused by the driver of another automobile, Christine Brinley.

Ms. Brinley was insured by Farmers Insurance Company (Farmers) under a policy with limits of $50,000 per person. The Killpacks settled their claim against Brinley for the policy limit of $50,000. Thereafter, Scott and Kathleen Killpack brought suit against Farm Bureau alleging breach of contract for failure to pay pursuant to policy provisions for underinsured motorist (UIM) coverage.

The Killpacks' policy of insurance with Farm Bureau contains a UIM endorsement which provides coverage of $100,000 per per-

son and $300,000 per accident. The parties stipulated before the trial court that Scott Killpack suffered damages from the collision in excess of $150,000 and that his wife, Kathleen, suffered damages for loss of consortium in the amount of $25,000.

Farm Bureau appeals the order of summary judgment by the trial court to the extent that the court held that Scott Killpack was entitled to recover the entire $100,000 limit under Farm Bureau's policy without set off against said limit of the $50,000 recovered from Brinley's insurer, Farmers. The Killpacks appeal the order of summary judgment challenging the court's finding that the UIM endorsement and policy did not provide a separate $100,000 limit of liability for Kathleen Killpack's claim for loss of consortium. Both appeals challenge the trial court's interpretation of the UIM coverage under the Killpacks' policy with Farm Bureau.

▆▆▆ In both appeals, we must consider the rules of construction of insurance contracts. First of all, where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992). An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* Language is ambiguous if it is reasonably open to different constructions. *Id.* The language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Id.* Any ambiguity is construed against the insurer. *Id.*

## FARM BUREAU APPEAL

Farm Bureau argues that the trial court erred in interpreting the UIM endorsement under its policy of insurance to require set off of the amount Scott Killpack received from Brinley's insurance carrier, Farmers, against Scott Killpack's total damages, rather than against the UIM policy limit in the Farm Bureau policy. In other words, Farm Bureau argues that the trial court erred in allowing Scott to recover $100,000, an amount representing Scott's total damages of $150,000 less the $50,000 that Scott received from Farmers. Instead, Farm Bureau argues, the trial court should only have allowed Scott to recover $50,000, an amount representing the $100,000 UIM policy limit less the $50,000 Scott received from Farmers.

In regard to the set off question, the relevant provisions in the policy of Farm Bureau provide as follows:

### UNDERINSURED MOTORIST COVERAGE ENDORSEMENT

. . .

In consideration of the premium paid and subject to the Insuring Agreements, Definitions, Conditions and Endorsements of the policy to which this endorsement is attached, it is understood and agreed that *the Company will pay all sums which a "person insured" is legally entitled to recover* from the owner and/or operator of an "underinsured vehicle," because of bodily injury sustained by a "person insured" and caused by accident. . . .

Coverage under this endorsement shall be applicable only after the limits of liability under any bodily injury bonds or insurance policies have been exhausted by payments of judgments or settlements.

"UNDERINSURED MOTOR VEHICLE" as used in this endorsement shall mean a motor vehicle . . . with respect to the ownership, maintenance or use of which there is a bodily injury liability bond or insurance policy applicable at the time of the accident, but its limit for bodily injury liability is less than the limit of liability for this coverage as stated in the declarations (Coverage A) of this policy.

\*    \*    \*    \*    \*    \*

*All sums payable under this endorsement* shall be reduced by any amount paid to a person insured, or his legal representative, by any individual or organization who may be legally liable to the person insured as a result of bodily injury arising from an accident. *In no event shall all sums recoverable by a "person insured" exceed the limits stated under Coverage A, limits of liability.*

*Coverages provided under this endorsement shall be excess of any applicable automobile liability insurance.*

\* \* \* \* \* \*

(emphasis added).

The coverage as stated in the declarations (Coverage A) of the Farm Bureau policy is $100,000 per person and $300,000 per accident.

■ Farm Bureau takes the position that the language "all sums payable under this endorsement" unambiguously limits recovery to the UIM endorsement limit and that any recovery from a third party is to be set off against said limit. Farm Bureau also argues that the language "[i]n no event shall all sums recoverable by a 'person insured' exceed the limits stated under Coverage A, limits of liability" unambiguously limits the amount an insured can collect, regardless of the source of the sums, to the UIM endorsement limit. Therefore, Farm Bureau argues that the language of the UIM endorsement unambiguously requires set off of the Killpacks' recovery of $50,000 from the insurance carrier for the under insured motorist, against Farm Bureau's $100,000 UIM policy limit.

On the other hand, the Killpacks argue that the language "all sums payable under this endorsement" refers to the scope of coverage provision in the UIM endorsement which states that Farm Bureau "will pay all sums which a person insured is legally entitled to recover" from an underinsured motorist. The Killpacks further argue that the language "[i]n no event shall all sums recoverable by a 'person insured' exceed the limits stated under Coverage A, limits of liability," means that the overall policy limit of $100,000 per person is the most that an insured can recover under the UIM endorsement. Under this interpretation, the amount of Scott Killpack's settlement with the underinsured motorist would be set off against his total damages. The remaining uncompensated damages would be recoverable from Farm Bureau under the UIM coverage up to the total limit of liability of $100,000 per person.

The trial court entered summary judgment in favor of the Killpacks on the question of

set off by finding that the entire policy limit of $100,000 was available to Scott Killpack without reduction for the $50,000 payment he received from Farmers. The trial court cited *Krombach*, 827 S.W.2d 208 (Mo. banc 1992), in support of its judgment.

In *Krombach*, Mary and Robert Krombach were the named insureds in an automobile liability policy issued by Mayflower Insurance Company, Ltd. (Mayflower). *Krombach*, 827 S.W.2d at 209. While operating his insured vehicle, Robert Krombach was injured due to the negligence of another driver, Richard Bolin. *Id.* at 210. Richard Bolin was insured under a policy with maximum limits of $100,000 per person and $300,000 per accident. *Id.* at 210. Robert Krombach settled his claim against Bolin for $100,000. *Id.* at 210. Robert's wife, Mary, settled her claim for loss of consortium for $50,000. *Id.* at 210. The dispute in *Krombach* was how to apply the setoff for the recovery against Bolin under the terms of the Krombachs' policy with Mayflower. *Id.* at 210.

The relevant portions of the Mayflower policy stated as follows:

PART 6: UNINSURED (AND UNDER-INSURED) MOTORIST

. . . .

B. UNINSURED MOTORIST COVERAGE

We will pay damages which a Covered Person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

(a) sustained by

1. covered person; and

(b) caused by an accident.

. . . .

D. MAXIMUM PAYMENTS UNDER YOUR UNINSURED MOTORIST COVERAGE.

The most we will pay for all claims from a single accident is the Limit of Coverage shown on the Coverage Data Page.

. . . .

Any amounts payable under Part 6 shall be reduced by all sums:

(a) paid because of bodily injury by or on behalf of someone who may be liable.

. . . .

*Id.* at 211.

In *Krombach,* the Missouri Supreme Court found the policy language above quoted to be ambiguous because both the tortfeasor's total liability and the underinsured motorist coverage limits are referred to as "amounts payable" in the text of Part 6 of the Mayflower policy. *Id.* at 211. However, the reduction clause does not say which "amount payable" is intended. *Id.* at 211. The court reasoned as follows:

> If 'amounts payable under Part 6' means 'damages which a Covered Person is legally entitled to recover' from the tortfeasor, as is stated in subpart B of Part 6, then [the Krombachs] are entitled to recover all damages in excess of the amount paid by Bolin's insurer up to the limits of the coverage. If 'amounts payable under Part 6' means only damages up to the maximum amount of underinsured motorist coverage, as stated in subpart D of Part 6, [the Krombachs] are not entitled to additional sums under the policy because Bolin's insurer had already paid [the Krombachs] an amount equal to or in excess of the underinsured motorist coverage.

*Id.* at 211.

Since Mayflower failed to make clear which "amount payable" was intended, Mayflower was required to bear the burden of the resulting confusion. *Id.* at 211. We believe that the language of the UIM endorsement in the Farm Bureau policy in question here is likewise ambiguous in that it is reasonably open to different constructions.

As in *Krombach,* Farm Bureau's use of the words "all sums payable" creates ambiguity. It is not clear whether "all sums payable" refers to the UIM endorsement limit, as Farm Bureau argues, or all sums which a person insured is legally entitled to recover, as the Killpacks argue. Further ambiguity is created by Farm Bureau's use of the words "[i]n no event shall all sums recoverable by a 'person insured' exceed the limits stated under Coverage A, limits of liability." It is not clear by this language whether the intention is to limit the amount an insured can collect, regardless of the source, to the

UIM endorsement limit as Farm Bureau argues, or merely to state that the overall policy limit of $100,000 per person is the most an insured can recover under the UIM endorsement.

The words used in the Farm Bureau policy are not certain in their meaning. The interpretation of the policy language as argued by the Killpacks is a reasonable construction viewed in the meaning that would ordinarily be understood by a layman who bought and paid for the policy.

In addition to the confusion created in the Farm Bureau UIM endorsement by its failure to state clearly the meaning of the phrases "all sums payable" and "all sums recoverable," the endorsement further provided that "[c]overages provided under this endorsement shall be in excess of any applicable automobile liability insurance."

In *Krenski v. Aubuchon,* 841 S.W.2d 721, 729–31 (Mo.App.1992), the court analyzed the effect on set off of language that provided "underinsured motor vehicles coverage shall be excess over all bodily injury bonds and insurance policies applicable at the time of the accident."

In *Krenski,* the court found that there was no ambiguity that set off was against the UIM policy limit under the terms of the limits of liability section of the policy in question. *Id.* at 731. However, the court found that reading the clause providing UIM coverage "shall be in excess over all" insurance policies together with the limits of liability language created a conflict and a resulting ambiguity. *Id.* at 731. In *Krenski,* the court reasoned that the "excess" language could leave an average lay person with the impression that coverage is provided over and above that furnished by the tortfeasor's insurance. *Id.* at 731.

The "excess" language in *Krenski* is analogous to the "excess" language in the case at bar. Therefore, as in *Krenski,* the ambiguity created by Farm Bureau's "excess" language requires construction in favor of coverage.

The trial court did not err in construing the policy language against Farm Bureau. Farm Bureau's appeal is denied.

## KILLPACK CROSS–APPEAL

In their cross-appeal, the Killpacks argue that the trial court erred by finding that the separate per person policy limit of $100,000 was not available under the UIM endorsement to satisfy Kathleen Killpack's claim for loss of consortium. As stated above under Farm Bureau's appeal, Scott Killpack suffered injuries in excess of $150,-000 and Kathleen Killpack suffered damages for loss of consortium in the amount of $25,-000. The Killpacks argue that Scott is entitled to recover the per person limit under the policy of $100,000 for his damages and that Kathleen is also entitled to recover $25,000 for her damages as a separate person.

Under the Limits Of Liability section of its policy, Farm Bureau provided as follows:

With respect to the Insurance under this endorsement, the limits of liability shall be the limit of liability stated in the declarations (Coverage A), subject to the following:

1. The limit of liability as applicable to each person is the maximum limits of the Company's liability for all damages, including damages for care or loss of service or consortium, because of bodily injury sustained by one person as a result of any one accident.

As previously stated, the per person limit under the policy is $100,000.

The limitation of liability language in the Farm Bureau policy is very similar to language found unambiguous in *United States Fidelity & Guaranty Co. v. Safeco Insurance Co.*, 522 S.W.2d 809 (Mo. banc 1975), and *Eaves v. Boswell*, 852 S.W.2d 353 (Mo.App. 1993).

In *United States Fidelity & Guaranty Co.*, the court analyzed policy language that provided:

[T]he limit of bodily injury liability ... as applicable to 'each person' is the limit of the insurer's liability for all damages, including damages for loss of services, arising out of bodily injury sustained by one person.

The court found that this language directed that the limitation was applicable to all claims of damage flowing from such bodily injury, and that therefore it was immaterial that some part of the damage may be claimed by some person other than the one claiming the bodily injury. *United States Fidelity & Guaranty Co.*, 522 S.W.2d at 821 n. 6. The court determined that from the language used, all damage claims, direct and consequential, resulting from injury to one person were subject to the limitation. *Id.* at 821 n. 6.

Likewise, in *Eaves v. Boswell*, 852 S.W.2d at 354, the Eaves argued that their claim for loss of services of their daughter, the injured party in an accident, was not subject to the limits which applied to their daughter's claim as the injured party. In *Eaves*, the relevant policy language provided as follows:

The bodily injury liability limit for each person is the maximum for all damages, including damages for care and loss of services arising out of bodily injury, sickness or disease, including death, suffered by any one person in any one accident.

*Eaves*, 852 S.W.2d at 354.

The court likened the policy language to the language used in *United States Fidelity & Guaranty Co.*, and noted that both policies in referring to "all damages" used the phrase "including damages for loss of services." *Eaves*, 852 S.W.2d at 358. As in *United States Fidelity & Guaranty Co.*, the court in *Eaves* found the language to be unambiguous and that it limited all claims whether direct (for the person injured) or consequential (for loss of services) to the policy limits for one person. *Eaves*, 852 S.W.2d at 358–59.

Like *Eaves* and *United States Fidelity & Guaranty Co.*, the Farm Bureau language at issue in the case at bar refers to "all damages ... including damages for ... loss of service or consortium." We find this language unambiguous in limiting all claims, direct or consequential, to the policy limit for one person.

The trial court did not err by ruling that a separate per person policy limit of $100,000 was not available to satisfy Kathleen Killpack's damages for loss of consortium.

The judgment of the trial court is affirmed.

All concur.