Tina NOLAN, Plaintiff–Respondent,

v.

**AMERICAN STATES PREFERRED INSURANCE COMPANY, Defendant–Appellant.**

Tina NOLAN, Plaintiff–Appellant,

v.

**AMERICAN STATES PREFERRED INSURANCE COMPANY, Defendant–Respondent.**

Nos. 18409, 18428.

Missouri Court of Appeals, Southern District, Division One.

April 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 22, 1993.

Application to Transfer Denied May 25, 1993.

James E. Corbett, John O. Newman, Corbett & Associates, Springfield, for plaintiff/respondent/appellant.

Mathew W. Placzek, Springfield, for defendant/appellant/respondent.

PARRISH, Chief Judge.

This is an appeal and a cross-appeal from a summary judgment entered in a declaratory judgment action. Tina Nolan (plaintiff) brought the action against American States Preferred Insurance Co. (American) to determine her rights and obligations under the terms of underinsured motorist coverage that was part of an automobile insurance policy she and her husband purchased from American.

American appeals the trial court's determination that plaintiff is entitled to receive benefits under the terms of her policy's underinsured motorist coverage (No. 18409). Plaintiff appeals the trial court's determination that benefits payable under the terms of her underinsured motorist coverage must be reduced by any amount payable to her from liability coverage provided by an insurance policy that covered a vehicle operated by Evah Ann Fletcher (Fletcher) with which plaintiff's automobile collided (No. 18428). This court affirms in both appeals.

Plaintiff was involved in an automobile accident when the 1989 Mercury Cougar that she was driving collided with a 1984 Jeep driven by Fletcher. Plaintiff sustained injuries in the accident as a result of Fletcher's negligence.

The automobile that plaintiff was driving at the time of the accident was one of two automobiles she and her husband owned. Both automobiles were insured by a single policy of automobile insurance issued by American. Fletcher and the automobile that she was driving were insured under the terms of an automobile insurance policy (Fletcher's policy) issued by Farmers Insurance Company. The liability coverage provided by Fletcher's policy was $25,000 for each person and $50,000 for each accident.

The trial court's determinations included (1) that "there is $50,000.00 in available underinsured motorist coverage ... and the anti-stacking provision contained in the policy does not act to diminish the [sic] that available coverage"; and (2) "that available coverage is diminished by the $25,000.00 of the tortfeasor's coverage."

Plaintiff's policy identifies plaintiff and plaintiff's husband as "named insured[s]." It lists both of their vehicles on the declarations page. It includes "[a]ny vehicle shown in the declarations" in its definition of "covered auto." Its declarations page shows the limit for "UNINSURED MOTORIST" to be "$25,000 PER PERSON/$50,000 PER ACCIDENT." The declarations page does not state a limit for

underinsured motorist coverage; however, the part of the policy that sets forth terms for the "UNINSURED/UNDERINSURED MOTORISTS COVERAGE," states, in its "Limit of Liability" subpart,[1] "Our maximum limit of liability for all damages ... sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage."

## No. 18409

American asserts that the trial court erred in finding that plaintiff's underinsured motorist coverage provided coverage of $50,000 "because the anti-stacking provision of [American's] policy is valid and enforceable." American contends that "the policy separately, clearly, and unambiguously defines and treats 'underinsured' and 'uninsured' motor vehicles and therefore the anti-stacking provisions are enforceable."

The provision of the underinsured motorist coverage that American characterizes as "the anti-stacking provision" is set forth in the "Limit of Liability" subpart. It states:

> The maximum limit of liability is the most we will pay regardless of the number of:
>
> 1. "Insureds";
> 2. Claims made;
> 3. Vehicles or premises shown in the Schedule or in the Declarations; or
> 4. Vehicles involved in the accident.

The "Insuring Agreement" subpart defines an underinsured motor vehicle as:

> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident; however, its limit for bodily injury liability is less than the limit of liability for this coverage.

American contends that since the "policy provides underinsured motorist coverage in the amount of $25,000 per person and $50,000 per accident, ... [t]his coverage is

equal to the limit of liability available under the policy of insurance which applied to the Fletcher vehicle, the alleged underinsured motor vehicle"; therefore, the underinsured motorist coverage in plaintiff's policy is not applicable.

Plaintiff responds to American's argument by pointing to another provision in the "Limit of Liability" subpart that states:

> Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is *the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage.* (Emphasis added.)

Plaintiff argues that this provision is inconsistent with "the anti-stacking provision." Since the policy states, separately and apart from "the anti-stacking provision," that the maximum limit of liability "is the *sum* of the limits of liability shown in the declaration for each person for uninsured motorist coverage," plaintiff contends that there is an ambiguity with respect to the limits of liability for underinsured motorist coverage that must be resolved in her favor. According to plaintiff, since there are two persons insured for uninsured motorist coverage and the policy limit for that coverage is $25,000 per person, the "sum of the limits of liability shown in the ... Declarations for each person" is $50,000, i.e., $25,000 for each of the two persons insured. Plaintiff argues that this ambiguity exists in "provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted" and, therefore, "must be strictly construed against the insurer," citing *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210–11 (Mo. banc 1992).

As additional support for her claim that her policy is ambiguous, plaintiff points to language in the policy's "GENERAL PROVISIONS" that states:

> **Two or More Auto Policies**
> If this policy and any other auto insurance policy issued to you by us apply to

---

**1.** Subpart, as used throughout this opinion, refers to subparts of the uninsured/underinsured

motorist coverage of plaintiff's automobile insurance policy.

the same accident, the maximum limit of liability under all policies will not exceed the highest applicable limit under any one policy.

**TWO OR MORE AUTOS INSURED**

**Two or More Autos Insured** provision does not apply to Uninsured Motorists coverage. However, no one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

The case cited by plaintiff in support of her claim that the language in her automobile insurance policy is ambiguous, *Krombach v. Mayflower Ins. Co., Ltd., supra,* summarizes Missouri law that is applicable to the facts in this case. With respect to rules of construction relative to insurance policies, *Krombach* states:

> Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *American Family Mutual Ins. Co. v. Ward,* 789 S.W.2d 791, 795 (Mo. banc 1990). Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991).
>
> An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Robin v. Blue Cross Hospital Services, Inc.,* 637 S.W.2d 695, 698 (Mo. banc 1982). Where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Behr v. Blue Cross Hospital Service, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986).

827 S.W.2d at 210.

*Krombach* also summarizes the law applicable to stacking uninsured motorist coverage and underinsured motorist coverage:

> The provisions in an insurance policy limiting the insured to recovery for only one of the uninsured motorist coverages provided for each of two cars covered by a single policy are prohibited by the public policy expressed in § 379.203, RSMo 1986. *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538, 542 (Mo. banc 1976). There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of underinsured motorist coverage and its ability to be stacked are ordinarily determined by the contract. *Rodriguez,* 808 S.W.2d at 383. In some policies, however, underinsured motorist coverage and uninsured motorist coverage are lumped into the same provisions of the policy. Where the insurance carrier lumps apples and oranges together and calls the entire class "apples," the courts have treated it as such. *Maxon v. Farmers Ins. Co.,* 791 S.W.2d 437 438–39 (Mo.App.1990); *Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.App.1990). The same public policy that invalidates anti-stacking provisions of uninsured motorist coverage is equally applicable to underinsured motorist coverage if the two are treated as the same in the insurance contract. The preparer of the insurance contract may not collect premiums for mandated insurance coverage and then by anti-stacking provisions deny multiple coverage. *Maxon,* 791 S.W.2d at 439.

*Id.* at 212.

■ This court agrees with plaintiff's interpretation. The policy limits for underinsured motorist coverage are the same as the policy limits for uninsured motorist coverage. The policy says, in defining the "maximum limit of liability" under the uninsured/underinsured motorist coverage, that the maximum limit of liability "sustained by any *one* person in any ... accident is the *sum of the limits of liability* shown ... in the Declarations for each person for Uninsured Motorists Coverage." (Emphasis added.) "Sum" indicates a combining or addition of numbers. This language, when compared to the "anti-stacking provision," gives rise to "duplicity, indistinctness, or uncertainty in the meaning of words used in the [policy]." That duplic-

ity and uncertainty is compounded by the general policy provisions, quoted *supra,* that state that policy provisions that limit the maximum amount of liability when there are two or more applicable policies do not apply to uninsured motorist coverage.

By identifying the policy limits of the underinsured motorist coverage only by reference to the policy limits of uninsured motorist coverage, American lumped its underinsured motorist coverage with its uninsured motorist coverage. In the language of *Krombach,* this is equivalent to "lump[ing] apples and oranges together and call[ing] the entire class 'apples.'" 827 S.W.2d at 212. Accordingly, the entire class, for purposes of determining the limit of liability, will be treated as "apples." *Id.*

Public policy requires uninsured motorist coverage to be stacked when two vehicles are insured under a single policy. *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538, 544–45 (Mo. banc 1976). Due to duplicity in establishing policy limits for underinsured motorist coverage by reference to policy limits for uninsured motorist coverage and ambiguity of other policy language, this court finds that the trial court's determination that the policy limits for underinsured motorist coverage should be stacked is not erroneous. American's point is denied.

### No. 18428

Plaintiff's cross-appeal is directed to the trial court's determination that the coverage available under the underinsured motorist coverage was required to be reduced by the amount payable to her by reason of the liability coverage provided by Fletcher's policy. Plaintiff asserts that the trial court erred in so finding "because the policy provision providing for a reduction on account of all sums paid on behalf of the person legally responsible for [plaintiff's] damages is ambiguous and should be construed against [American]."

The applicable provision is included in the "Limit of Liability" subpart. It states:

C. Any amounts otherwise payable for damages under this coverage will be reduced by all sums paid because of

the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

Plaintiff relies on *Krombach v. Mayflower Ins. Co., Ltd., supra,* in contending that this provision is ambiguous and that the policy limit for underinsured motorist coverage should not be reduced by Fletcher's $25,000 liability coverage. The corresponding provision in the underinsured motorist coverage in *Krombach* stated:

PART 6: UNINSURED (AND UNDERINSURED) MOTORIST

.    .    .    .    .

D. MAXIMUM PAYMENTS UNDER YOUR UNINSURED MOTORIST COVERAGE.

The most we will pay for all claims from a single accident is the Limit of Coverage shown on the Coverage Data Page.

. . . .

Any *amounts payable under Part 6* shall be reduced by all sums:

(a) paid because of bodily injury by or on behalf of someone who may be liable. . . . . (Emphasis added.)

827 S.W.2d at 211.

The ambiguity found in *Krombach* was explained:

If "amounts payable under Part 6" means "damages which a Covered Person is legally entitled to recover" from the tortfeasor, as is stated in subpart B of Part 6, then plaintiffs are entitled to recover all damages in excess of the amount paid by Bolin's insurer up to the limits of the coverage. If "amounts payable under Part 6" means only damages up to the maximum amount of underinsured motorist coverage, as stated in subpart D of Part 6, plaintiffs are not entitled to additional sums under the policy because Bolin's insurer had already paid plaintiffs an amount equal to or in excess of the underinsured motorist coverage.

The problem with the policy provisions . . . is that both 1) the tortfeasor's total liability and 2) the underinsured motorist

coverage limits are referred to as "amounts payable" in the text of Part 6. However, the reduction clause does not say which "amount payable" is intended.... Having failed to make clear which "amount payable" was intended, the insurer must bear the burden of the resulting confusion. This Court holds that the ambiguity must be construed in favor of coverage. Accordingly, the reduction will be made from the total damages caused by Bolin rather than from the limit of the coverage.

*Id.*

■ The reduction clause in plaintiff's underinsured motorist coverage refers to "amounts otherwise payable for damages *under this coverage.*" (Emphasis added.) "[T]his coverage" plainly refers to the uninsured/underinsured motorist coverage in plaintiff's policy. It is not ambiguous. It does not refer to total damages caused by Fletcher in the event they exceed the amount of underinsured motorist coverage. The trial court correctly determined that the $50,000 underinsured motorist coverage would be required to be reduced by the amount of the tortfeasor's (Fletcher's) liability coverage. The point is denied.

No. 18409 is affirmed. No. 18428 is affirmed.

CROW, P.J., and SHRUM, J., concur.

## ON MOTION FOR REHEARING

PER CURIAM.

In its motion for rehearing, American adds nothing that was not included in its brief and previously considered by this court. American again cites *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379 (Mo. banc 1991), and, apparently based upon the fact that this court's principal opinion did not refer to that case, deduces that it was not considered. It was considered. It was not cited nor discussed because the policy language in *Rodriguez* was not duplicitous so as to be indistinct and uncertain, as the policy language was in this case.

As pointed out in the principal opinion, the insurance policy in question stated, in addition to what American characterized as "the anti-stacking provision," that the maximum limit of liability was a sum of limits of liability that were "shown in the declaration for each person for uninsured motorist coverage." This language appeared in the "Limit of Liability" subpart of the "UNINSURED/UNDERINSURED MOTORISTS COVERAGE." It was applicable to both types of coverage.

This produced two results. It created duplicity in that it provided two different ways for ascertaining maximum policy limits for underinsured motorist coverage, each of which produced different maximum amounts, i.e., it created an ambiguity; and, insofar as identifying policy limits, it treated underinsured coverage as though it were uninsured coverage. The policy in *Rodriguez* did not do those things.

Nolan also filed her Application for Rehearing and/or Transfer to the Missouri Supreme Court in No. 18428. It presents nothing new. Nolan's Motion for Rehearing and/or Transfer to the Missouri Supreme Court in No. 18428 is denied. American's Motion for Rehearing and Application for Transfer to the Supreme Court in No. 18409 is denied.