**AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**Joey CORNEJO, Defendant/Appellant.**

**No. 63609.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 7, 1993.

---

The Hullverson Law Firm, Gretchen Hardy Myers, David Eric Sowers, Friedman, Weitzman & Friedman, St. Louis, for defendant/appellant.

Thomas J. Casey, David O. Fischer, St. Louis, Charles M. Wolff, Clayton, for plaintiff/respondent.

SIMON, Presiding Judge.

Appellant, Joey Cornejo, appeals a summary judgment entered in favor of respondent, American Economy Insurance Company, after the trial court ruled that Dewayne John Blum (Blum) was not an underinsured motorist as defined in a motor vehicle insurance policy issued to appellant by respondent. We affirm in part and reverse and remand in part.

The parties filed an agreed statement of facts. Appellant was injured when the vehicle he was operating was involved in a collision with a vehicle operated by Blum, who was insured by American Family Insurance Company with liability insurance limits of $25,000 per person in any one accident and $50,000 total per accident. Appellant had a single policy issued by respondent on four vehicles with underinsured motorist coverage on each vehicle for $25,000 per person in any one accident and $50,000 total per accident. The record does not indicate what amounts, if any, were paid to appellant by Blum or his insurer. Respondent filed a declaratory judgment action, alleging that there was no applicable underinsured motorist coverage because Blum by policy definition was not an underinsured motorist and, further, if underinsured motorist coverage was applicable, appellant could not, as per the terms of the policy, "stack" the underinsured motorist coverage. On February 8, 1993 the trial court granted summary judgment in respondent's favor finding that because Blum's liability coverage was not less than the limits of coverage provided to appellant by respondent's policy, Blum was not an underinsured motorist within the definition of the policy. The trial court also found that because the limits of Blum's policy are the same as respondent's policy, the insurance is not excess coverage and respondent would be entitled to a full set-off. Finally, the trial court found that language of the policy relevant to stacking is clear and unambiguous in that the limit is the policy amount regardless of the number of vehicles shown in the declaration.

On appeal, appellant contends the trial court erred in granting respondent's motion for summary judgment in that due to the ambiguity of the policy and consumer expectations (a) he is entitled to stack all four of the underinsured coverages, and (b) he is entitled to the full amount of his policy coverage and respondent was not entitled to any set-off.

The policy issued to appellant contains PART C—UNINSURED/UNDERINSURED MOTORISTS COVERAGE, which provides, in pertinent part:

**Insuring Agreement**

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured" or "underinsured motor vehicle" because of "bodily injury" sustained by an "insured" and caused·by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured" or "underinsured motor vehicle."

\* \* \* \* \* \*

D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident; however, its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \* \* \* \*

**Limit of Liability**

\* \* \* \* \* \*

B. If the limit of liability is shown separately for each person and each accident, the following shall apply. If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage;

2. Subject to the maximum limit for each person described in a. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage;

\* \* \* \* \* \*

The maximum limit of liability is the most we will pay regardless of the number of:
1. "insureds";
2. Claims made;
3. Vehicles or premises shown in the Schedule or in the Declarations, or
4. Vehicles involved in the accident.

In *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210–11[1], [2, 3] (Mo. banc 1992), our Supreme Court set out rules of construction relative to insurance policies:

Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *American Family Mutual Ins. Co. v. Ward,* 789 S.W.2d 791, 795 (Mo. banc 1990). Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991).

An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Robin v. Blue Cross Hospital Services, Inc.,* 637 S.W.2d 695, 698 (Mo. banc 1982). Where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Behr v. Blue Cross Hospital Service, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986). There are at least two reasons for this rule of construction. First, insurance is designed to furnish protection to the insured, not defeat it. *Weathers v. Royal Indemnity Co.,* 577 S.W.2d 623, 626 (Mo. banc 1979). Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer. *Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617, 623 (Mo.1968); *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707, 710–11 (Mo.1964). Second, as the drafter

of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract. As noted by Judge Learned Hand, "[T]he canon contra proferentum is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter ... Insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Gaunt v. John Hancock Mutual Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir. 1947).

Appellant and respondent agreed at oral argument that the stacking issue presented in this case is the same as in *Nolan v. American States Preferred Insurance Co.,* 851 S.W.2d 720 (Mo.App.1993), and *Keating v. Gavrilovici,* 861 S.W.2d 205 (Mo.App.E.D. 1993), and that the judgment of the trial court should be reversed on the stacking issue.

In *Nolan,* the Southern District faced the question of whether underinsured motorist coverages, under the same "Limit of Liability" language as in the present case, were required to be stacked. The court found that the insurance company, by identifying the policy limits of the underinsured motorist coverage only by reference to the policy limits of uninsured motorist coverage, had lumped its underinsured motorist coverage with its uninsured motorist coverage. The court stated, "In the language of *Krombach,* this is equivalent to 'lump[ing] apples and oranges together and call[ing] the entire class "apples." ' 827 S.W.2d at 212. Accordingly, the entire class, for purposes of determining the limit of liability will be treated as 'apples.' *Id." Nolan,* 851 S.W.2d at 724[1]. Since public policy requires uninsured motorist coverage to be stacked when two vehicles are insured under a single policy, *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538, 544–45 (Mo. banc 1976), and due to duplicity in establishing policy limits for underinsured motorist coverage by reference to policy limits for uninsured motorist coverage and ambiguity of other policy language, the court upheld the trial court's determination that the policy limits for underinsured motorist coverage should be stacked. *Nolan,* 851 S.W.2d at 724[1].

In *Keating v. Gavrilovici,* 861 S.W.2d 205 (Mo.App.E.D.1993), this court addressed the question of whether Keating's underinsured motorist coverage could be stacked for purposes of determining the limits of liability under the policy, in order to determine whether Gavrilovici was an underinsured motorist. We found that "by referring to 'uninsured motorist coverage shown in the Declaration,' the policy language limiting liability did not exclude underinsured motorist coverage which was included within the uninsured motorist coverage. Both coverages are provided for by the payment of one premium per vehicle identified in the Declaration as 'uninsured motorist coverage.' " *Id.,* 861 S.W.2d at 208.

Here, the limit of liability contained in PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE is stated as the "sum of the limits of liability shown in the Schedule or in the Declaration for each person for Uninsured Motorist Coverage." As in *Nolan* and *Keating,* respondent's policy provides uninsured and underinsured motorist coverage together, effectively treating both as uninsured motorist coverage.

The ambiguity created by the establishment of policy limits for underinsured motorist coverage by reference to policy limits for uninsured motorist coverage, and other policy language treating uninsured and underinsured motorist coverage similarly, requires that in accordance with public policy the underinsured motorist coverage be treated as uninsured motorist coverage and therefore be stacked. *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d at 544–45. *See also, Krombach,* 827 S.W.2d at 212[5–7]. Moreover, the policy's declaration pages show coverage limits and premium amounts for uninsured motorist coverage, but do not mention underinsured motorist coverage. By referring to uninsured motorist coverage in the declaration pages the policy does not exclude underinsured motorist coverage which is provided for in PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE. Coverage for both uninsured and underinsured

motorist coverage is provided by the payment of one premium for each vehicle identified in the declaration.

■ Thus, appellant is entitled to stack the four underinsured motorist coverages contained in the policy, making the policy's limit of liability for bodily injury $100,000 per person in any one accident. Therefore, Blum, with limits of $25,000, is an underinsured motorist as defined in the policy issued to appellant by respondent, and the trial court erred in granting summary judgment in favor of respondent on this issue.

Appellant, in subpart B of his point on appeal, contends the trial court erred in granting summary judgment to respondent in that the policy provision is ambiguous and, consistent with consumer expectations, he is entitled to the full amount of his policy coverage and respondent was not entitled to any set-off. The trial court found specifically that the policy provides for a set-off of any amounts payable by organizations responsible.

■ The language of the set-off provision, contained in PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE, provides:

Any amounts otherwise payable for damages under this coverage will be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

Relying on *American Family Mutual Insurance Co. v. Turner*, 824 S.W.2d 19 (Mo. App.1991), appellant contends that the set-off clause is ambiguous and should be construed in his favor. In *Turner*, the set-off clause contained in underinsured motorist coverage stated:

Any amounts payable will be reduced by: (1) A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

In *Turner* we found the term "amounts payable" to be ambiguous, and construed

"amounts payable"—the amount the insurer was obligated to pay—to mean the determined amount of damages for bodily injuries the insureds sustained, reduced by the amount paid by the tortfeasor's insurer. *Id.*, at 22[4].

In *Keating*, 861 S.W.2d at 207 this court held that there was no ambiguity in policy language providing for a reduction of "amounts otherwise payable for damages *under this coverage*," where that language referred to the uninsured/underinsured motorist coverage.

In *Nolan*, the court was faced with the same question, whether the set-off applied to the total damages caused by the alleged tortfeasor, or to the insurance company's limits of liability under the coverage. The policy in *Nolan* contained the same set-off language as here. The court stated:

The reduction clause in plaintiff's underinsured motorist coverage refers to "amounts otherwise payable for damages *under this coverage*." [Emphasis of the court.] "[T]his coverage" plainly refers to the uninsured/underinsured motorist coverage in plaintiff's policy. It is not ambiguous. It does not refer to total damages caused by [the tortfeasor] in the event they exceed the amount of underinsured motorist coverage. The trial court correctly determined that the ... underinsured motorist coverage would be required to be reduced by the amount of the tortfeasor's ... liability coverage.

*Nolan*, 851 S.W.2d at 725[2].

Here, the policy differs from the policy in *Turner* because the reduction is specifically applicable to "any amounts otherwise payable for damages *under this coverage*." (Emphasis added.) We find that this language is not ambiguous and refers to the coverage provision in which it is contained, i.e. PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE. Since the language of the set-off clause is the same as in *Nolan*, we find the holding of that case to apply here. *See also, Keating*, 861 S.W.2d at 207. Accordingly, respondent's limit of liability for the stacked underinsured motorist coverage is to be reduced by any amounts paid to appellant by Blum or his insurer, and

the trial court did not err in granting summary judgment in favor of respondent on this issue.

The judgment of the trial court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

SMITH and PUDLOWSKI, JJ., concur.