Robin Howard **HARRIS**, Appellant,

v.

**SHELTER MUTUAL INSURANCE COMPANY, Respondent.**

**No. WD 63418.**

Missouri Court of Appeals, Western District.

Aug. 10, 2004.

Thad R. Mulholland, Columbia, MO, for Appellant.

James C. Spangler, Sedalia, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, P.J.

Robin Harris appeals the trial court's entry of summary judgment in favor of Shelter Mutual Insurance Company. Mr. Harris sought benefits under the underinsured motorist provision of an automobile insurance policy issued to him by Shelter. On appeal, he asserts that the underinsured motorist provision of the policy is ambiguous and should be construed to provide such coverage to him under the doctrine of reasonable expectations. The judgment of the trial court is affirmed.

## UNDISPUTED FACTS

On December 10, 2001, Mr. Harris sustained injuries when the vehicle he was driving collided with a vehicle operated by Leroy Peneston. Mr. Peneston's negligence caused the accident; and, as a result, Mr. Peneston's insurance company paid Mr. Harris $50,000, the limits of liability of Mr. Peneston's insurance policy. Mr. Harris sought the balance of his damages from his insurance carrier, Shelter, under the policy's underinsured motorist coverage.

The endorsement for underinsured motorist coverage in the Shelter policy provides limits of $50,000 per person and $100,000 per accident. The endorsement provides:

> We will pay damages for bodily injury sustained by an Insured which such insured or such insured's legal representative is legally entitled to recover from the owner or operator of an underinsured motor vehicle.

The endorsement defines an "Underinsured motor vehicle" as:

> An insured motor vehicle when the sum of the limits of liability of the auto bodily injury liability insurance coverage and bonds on such vehicle is less than the limits of liability of the uninsured motorist coverage carried on this policy.

The uninsured motorist coverage provided under the policy is $50,000 per person and $100,000 per accident.

After Shelter denied Mr. Harris' claim for underinsured motorist benefits, he filed suit against Shelter to compel payment of $50,000, the underinsured motorist coverage under the policy, or in the alternative, $200,000, the amount yielded by stacking the underinsured motorist coverage of each of his four vehicles insured by Shelter. Both parties filed motions for sum-

mary judgment. The trial court entered summary judgment in favor of Shelter. This appeal by Mr. Harris followed.

## STANDARD OF REVIEW

▬▬ Appellate review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

▬▬ A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* The facts in the case presented are not contested, and the issue is one of law. Thus, the question is whether the trial court stated the proper legal conclusion based on the facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

## DISCUSSION

In his sole point on appeal, Mr. Harris claims that the trial court erred in entering summary judgment in favor of Shelter because the definition of "underinsured motor vehicle" in the endorsement is ambiguous and, therefore, should be construed against Shelter to provide coverage consistent with his reasonable expectations.

▬▬ In interpreting the language of an insurance policy, an appellate court gives the language its plain meaning, which is the meaning that would ordinarily be understood by the average layperson who bought the policy. *Cameron Mut. Ins. Co. v. Woods*, 88 S.W.3d 896, 901 (Mo.App. W.D.2002) (quoting *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo.App. E.D.2001)). An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the policy. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). If a conflict exists between a technical definition within an insurance policy and the meaning that would reasonably be understood by the average layperson, the layperson's definition will be applied unless the technical meaning is clearly intended. *Id.* If an ambiguity exists in a policy, it is construed against the insurer because insurance is designed to furnish, not defeat, protection for the insured and the company is in the best position to remove ambiguity from the

policy. *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 757 (Mo.App. S.D.2002). A court is not, however, permitted to create an ambiguity to distort the language of an unambiguous policy or to enforce a particular construction that it feels is more appropriate. *Rodriguez*, 808 S.W.2d at 382. Thus, an unambiguous insurance policy will be enforced as written absent a statute or public policy requiring coverage. *Id.*

The definition of "underinsured motor vehicle" in the Shelter policy is not ambiguous. *Tapley*, 91 S.W.3d at 759. In *Tapley*, the Southern District recently analyzed an identical definition of "underinsured motor vehicle" in a Shelter insurance policy in determining whether the plaintiff was entitled to underinsured motorist benefits. In the case, the plaintiff was injured in an automobile accident and sustained damages of $150,000 or greater. *Id.* at 756. The tortfeasor carried $100,000 in liability insurance coverage through State Farm Mutual Automobile Insurance Co., and the plaintiff's vehicle was insured under a policy issued by Shelter that included an endorsement providing for $50,000 for underinsured motorist coverage. *Id.* The uninsured motorist coverage provided under the Shelter policy was $25,000. *Id.* The trial court found the Shelter policy ambiguous and awarded the plaintiff $50,000 in benefits under the underinsured motorist provision of the policy. *Id.* at 756–57.

On appeal, the Southern District of this court reversed the trial court's award and held that the definition of "underinsured motor vehicle" was not ambiguous. *Id.* at 759. It found that the policy clearly described the coverage and the basis to be used to determine if the tortfeasor was an "underinsured" motorist. *Id.* It also explained that the fact that the tortfeasor's liability coverage was compared to the lim-

its of the plaintiff's uninsured motorist coverage did not create an ambiguity. *Id.* Thus, the court concluded that because the tortfeasor had $100,000 in liability coverage and the plaintiff had $25,000 in uninsured motorist coverage, the tortfeasor's vehicle did not meet the unambiguous definition of an "underinsured motor vehicle," and the trial court erred in awarding the plaintiff uninsured motorist benefits. *Id.* Other cases analyzing similar definitions of "underinsured motor vehicle" also support a finding that the Shelter policy in this case is unambiguous. *See, e.g., Rodriguez*, 808 S.W.2d at 382 (where policy that defined an underinsured motor vehicle as one having insurance coverage less than the limit of liability for the underinsured motorist coverage under the policy was unambiguous); *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 325 (Mo.App. E.D. 2002)(where policy that defined an underinsured motor vehicle as one "for which the sum of all liability . . . policies at the time of the accident are less than the limit of" the underinsured motorist coverage under the policy was unambiguous); *Trapf v. Commercial Union Ins. Co.*, 886 S.W.2d 144, 147 (Mo.App. E.D.1994) (where policy that defined an underinsured motor vehicle as one whose limit for bodily injury liability is less than the limit of liability for the underinsured motorist coverage under the policy was unambiguous).

Citing the reasonable expectations doctrine, Mr. Harris attempts to create an ambiguity in the policy based on the representations made by his insurance agent and the insurer's informational brochure. Application of the objective reasonable expectation doctrine, however, depends on the presence of an ambiguity in the policy language. *Rodriguez*, 808 S.W.2d at 382. Because the Shelter policy is unambiguous, no basis exists for applica-

tion of the objective reasonable expectation doctrine to the policy. *See Id.* at 383.

■ Mr. Harris also argues that the policy is ambiguous because it lumps uninsured motorist coverage and underinsured motorist coverage by referring to uninsured motorist coverage in the definition of underinsured motorist coverage. Mr. Harris cites *Nolan v. American States Preferred Insurance Co.,* 851 S.W.2d 720 (Mo.App. S.D.1993), and *Niswonger v. Farm Bureau Town & Country Insurance Co. of Missouri,* 992 S.W.2d 308, 313 (Mo. App. E.D.1999), in support of his argument. These cases, however, are distinguishable from the instant case. In *Nolan,* the insurance policy at issue identified the policy limits of the underinsured motorist coverage only by reference to the policy limits of the uninsured motorist coverage. 851 S.W.2d at 724. The Southern District found that the underinsured motorist coverage was lumped with the uninsured motorist coverage; therefore, the underinsured motorist coverage would be treated as uninsured motorist coverage for purposes of determining whether underinsured motorist coverages should be stacked. *Id.*

In *Niswonger,* the declaration pages of the three policies at issue lumped the underinsured and uninsured motorist coverages together as one coverage denominated "Coverage D," and the insured was charged a single premium for that coverage. 992 S.W.2d at 319–20. The Eastern District of this court found that the lumping together of the two coverages on the declarations pages and charging a single premium for both was a form of intertwining the two coverages that was ambiguous. *Id.* at 320. Thus, the court applied the reasonable expectations doctrine to resolve the dispute regarding the stacking of the underinsured motorist coverage. *Id.*

Unlike in *Nolan* and *Niswonger,* the uninsured and underinsured motorist coverages in the Shelter policy are not lumped together. The declaration page denominates uninsured motorist coverage as "Coverage E" and lists underinsured motorist coverage under a separate endorsement. Additionally, the uninsured motorist coverage provisions including the definition of an uninsured motor vehicle is found in the body of the policy while underinsured motorist coverage provisions, including the definition of an underinsured motor vehicle, are found in the separate endorsement. Although the definition of "underinsured motor vehicle" refers to the uninsured motorist limits of liability, the declarations page and the policy provides for the uninsured and underinsured motorist coverages separately. The two coverages are not lumped together, and the policy, therefore, is not ambiguous. *See Lang v. Nationwide Mut. Fire Ins. Co.,* 970 S.W.2d 828, 834 (Mo.App. E.D. 1998)(where underinsured and uninsured motorist coverages were found not to be inseparably intertwined and, thus, policy was unambiguous).

■ Finally, Mr. Harris contends that even if the definition of "underinsured motor vehicle" is unambiguous, summary judgment was improper because he had $450,000 in uninsured motorist coverage as a result of stacking the uninsured motorist coverages available on five separate policies issued to him by Shelter. Mr. Harris asserts that because Mr. Peneston's liability coverage ($50,000) was less than the limits of liability of the uninsured motorist coverage carried by him ($450,000), Mr. Peneston's vehicle was an underinsured motor vehicle as defined in the policy, thus, he was entitled to underinsured motorist benefits.

■ In making this assertion, Mr. Harris relies on *Cameron Mutual Insur-*

*ance Co. v. Madden*, 533 S.W.2d 538, 544–45 (Mo. banc 1976), which held that Missouri public policy requires that multiple uninsured motorist coverages must be allowed to be stacked and prevents insurers from including policy language denying such stacking. *See also Niswonger*, 992 S.W.2d at 313. This public policy, however, flows from Missouri statutory law that mandates that all policies of automobile insurance in this state must include uninsured motorist coverage, section 379.203, RSMo 2000. *Id.* The Missouri legislature has not mandated underinsured motorist coverage, and, thus, no public policy requirement that underinsured motorist coverage be stacked exists. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 212 (Mo. banc 1992); *Niswonger*, 992 S.W.2d at 313–14. Thus, although the policy in this case defines an underinsured motor vehicle in terms of the uninsured motorist coverage, the public policy regarding uninsured motorist coverage does not apply in determining whether Mr. Peneston is an underinsured motorist and, thus, whether Mr. Harris is entitled to underinsured motorist benefits. Additionally, because of the absence of public policy regarding underinsured motorist coverage, the existence of such coverage and its ability to be stacked are, therefore, determined by the insurance policy. *Id.* How an underinsured motor vehicle is defined is also dictated by the policy. An underinsured motor vehicle is defined in the Shelter policy as one having insurance coverage "less than the limits of liability of the uninsured motorist coverage *carried on this policy.*" (emphasis added). The policy provides $50,000 of uninsured motorist coverage. The uninsured motorist coverages on Mr. Harris' other policies are, therefore, irrelevant in determining whether Mr. Peneston was an underinsured motorist.

In conclusion, the Shelter policy in this case defines an underinsured motor vehicle as one having insurance coverage "less than the limits of liability of the uninsured motorist coverage carried on this policy." The definition of underinsured motor vehicle is not ambiguous. Mr. Peneston has $50,000 in liability coverage, which was paid to Mr. Harris. Mr. Harris has $50,000 in uninsured motorist coverage. Since Mr. Peneston's coverage is equal to the limit of liability of uninsured motorist coverage under Mr. Harris' policy, Mr. Peneston's vehicle is not an underinsured motor vehicle as defined by the Shelter policy. Mr. Harris is, therefore, not entitled to underinsured motorist benefits. The trial court properly granted summary judgment in favor of Shelter. The point is denied.

The judgment of the trial court is affirmed.

LOWENSTEIN and EDWIN H. SMITH, JJ., concur.