

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| BETTY MENDELSON, | ) | No. ED110315 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 19SL-CC04358 |
| | ) | |
| LISA MCLAUGHLIN AS THE | ) | Honorable William M. Corrigan, Jr. |
| PERSONAL REPRESENTATIVE OF THE | ) | |
| ESTATE OF PAUL MENDELSON, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| BANKERS STANDARD INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Respondent. | ) | Filed: November 15, 2022 |

Michael E. Gardner, C.J., James M. Dowd, J., and Lisa P. Page, J.

## Introduction

This insurance policy coverage case arose from an October 28, 2018, single-vehicle accident in which Paul Mendelson, the driver, was killed and his wife, appellant Betty Mendelson, was seriously injured. Mrs. Mendelson made claims under both the liability and underinsured motorist coverage (UIM) portions of the Mendelsons' insurance policy (the Policy) with respondent Bankers Standard Insurance Company (Bankers Standard). After Mrs. Mendelson filed suit, the parties brought cross-motions for summary judgment and Mrs. Mendelson now appeals the summary judgment entered in favor of Bankers Standard in which

the court found (1) that the Policy's $500,000 in liability coverage was reduced to $25,000 by application of a "household" exclusion in the liability coverage portion of the Policy (the liability household exclusion), and (2) that the Policy's $500,000 in UIM coverage was reduced to $25,000 by a second "household" exclusion (the UIM household exclusion). Accordingly, the court entered judgment awarding Mrs. Mendelson $25,000 under the Policy's liability coverage and $25,000 under the UIM coverage.[1]

Mrs. Mendelson raises two points on appeal. In her first point, she asserts that the UIM household exclusion is unenforceable because Bankers Standard's policy treats uninsured motorist (UM) and UIM coverage in the same way. She relies on a line of Missouri cases[2] that addressed the issue whether Missouri's public policy that allows insureds to stack[3] multiple, statutorily-mandated UM coverages should be extended to UIM coverages *when* the policies treat UM and UIM coverage identically. We decline Mrs. Mendelson's invitation to extend to this case the rationale employed in those case because the provisions of the Bankers Standard policy here have no comparable public policy implications and the only similarity with that line of cases is that the Policy here treated UM and UIM coverage identically.

In her second point, Mrs. Mendelson claims the UIM household exclusion is unenforceable because the Policy is ambiguous in that it broadly and unequivocally grants

---

[1] The part of the judgment concerning the liability coverage is not the subject of this appeal.

[2] *See Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 212 (Mo. banc 1992); *Nolan v. American States Preferred Ins. Co.*, 851 S.W.2d 720, 724 (Mo. App. S.D. 1993); *American Economy Ins. Co. v. Cornejo*, 866 S.W.2d 174, 177 (Mo. App. E.D. 1993).

[3] "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Estate of Hughes v. State Farm Mut. Auto. Ins. Co.*, 485 S.W.3d 357, n.1 (Mo. App. W.D. 2016) (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)).

$500,000 in UIM coverage in one part of the Policy but then seeks to strip $475,000 of that coverage via the UIM household exclusion in another part of the Policy. We disagree. While an insurance policy that unequivocally grants coverage at one point in the policy and then takes it away at another may be ambiguous, that did not occur here. When the Bankers Standard policy is read as a whole, an ordinary insurance consumer would understand that the grant of $500,000 in UM/UIM coverage was subject to limitations and exclusions set forth elsewhere in the Policy such as the UIM household exclusion.

We affirm the trial court's entry of summary judgment.

## Background

On October 28, 2018, a single-vehicle accident occurred on New Ballas Road in Creve Coeur, Missouri, in which the driver Paul Mendelson was killed and his wife and passenger Mrs. Mendelson was injured. At the time of the accident, the Mendelsons were both listed as named insureds on the declarations page of the Policy, which again provided $500,000 in liability coverage and $500,000 in combined UM and UIM coverage.

Mrs. Mendelson brought a claim against her husband's estate (the Estate) under the liability portion of the Policy claiming Mr. Mendelson's negligence caused the accident. In the liability coverage portion of the Policy, a section titled "DAMAGES WE WON'T PAY" sets forth the following exclusion:

> (13) We do not provide Liability Coverage for any insured for bodily injury to you or any family member to the extent that the limits of liability for this coverage exceeds the limits of liability required by the Missouri Financial Responsibility Law.[4]

---

[4] This type of exclusion is commonly referred to as a household exclusion. See *Kellar v. American Family Mut. Ins. Co.*, 987 S.W.2d 452, 454 (Mo. App. W.D. 1999) (The purpose of a household exclusion is "to prohibit recovery by relatives of the insured who reside in the insured's household when the insured is the negligent party.").

3

While this liability household exclusion is not the subject of Mrs. Mendelson's appeal, it is relevant because reducing the *liability* coverage available to Mrs. Mendelson's claim against the Estate from $500,000 to $25,000 triggered the UIM coverage under the Policy since Mrs. Mendelson's stipulated damages exceeded $25,000.

The Policy does not define "underinsured," "underinsured motorists," or "underinsured vehicles." Rather, it includes in its definition of an uninsured vehicle the concept of a UIM vehicle:

> An *uninsured vehicle* is any motor vehicle or *trailer* that, at the time of a *vehicle accident*, is:
> - not covered by a bond or policy for bodily injury;
> - covered, but the coverage limit is less than *your* limit for this coverage;
> - covered, but the company denies coverage or is, or becomes, insolvent;
> - a hit-and-run vehicle whose owner can't be identified.

The first bullet point describes the basic concept of an <u>uninsured</u> motor vehicle. *See Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109, 112 (Mo. App. E.D. 1975). The second bullet point, however, describes an <u>underinsured</u> vehicle. *See Miller v. Ho Kun Yun*, 400 S.W.3d 779, 785–86 (Mo. App. W.D. 2013) ("An 'underinsured motor vehicle,' quite simply, is a motor vehicle that is insured by a liability policy having limits that are less than the specified underinsured motorist coverage provided by the insured's coverage.").

Thus, application of the liability household exclusion together with Mrs. Mendelson's stipulated damages in excess of $25,000 meant that the motor vehicle Mr. Mendelson was driving now satisfied the Policy's definition of an *uninsured vehicle* in that "the [vehicle's] coverage limit is less than [Mrs. Mendelson's] limit for this coverage" such that the Policy's combined $500,000 in UM/UIM coverage was now implicated.

In the combined UM/UIM portion of the Policy, a section appears called "DAMAGES WE WON'T PAY" which sets forth a second household exclusion, the one that is at issue here:

4

We do not provide liability coverage for any person for bodily injury to you or any family member to the extent that the limits of liability for this coverage exceed the limits of liability required by the Missouri Financial Responsibility Law. This does not include any amounts payable under medical expenses or any worker's compensation law, disability benefits law or similar law.[5]

In its summary judgment motion, Bankers Standard argued that (1) the Policy's liability household exclusion reduced the liability coverage from $500,000 to $25,000, and (2) the UIM household exclusion reduced that coverage from $500,000 to $25,000. Mrs. Mendelson's memorandum in opposition presented the same arguments she makes here. This appeal follows.

## Standard of Review

Our review of summary judgment is *de novo*. *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008)). We apply "the same criteria as the trial court in determining whether summary judgment was properly granted." *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 56 (Mo. App. W.D. 2002). "Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Heffernan v. Reinhold*, 73 S.W.3d 659, 663 (Mo. App. E.D. 2002).

Our interpretation of an insurance policy and our determination of "whether coverage and exclusion provisions are ambiguous" are questions of law we review *de novo*. *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014); *Swadley v. Shelter Mutual Insurance Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017). When construing a policy, we apply the meaning an "ordinary person of average understanding" would attach to the policy if purchasing

---

[5] This UIM household exclusion was added to the Policy as part of an amendment called the "Missouri Auto Endorsement."

insurance, and we resolve ambiguities in the insured's favor. *Dutton v. American Family Mut. Ins. Co.*, 454 S.W.3d 319, 322 (Mo. banc 2015).

## Discussion

### I. Mrs. Mendelson's public policy argument.

In her first point, Mrs. Mendelson contends the Policy's UIM household exclusion that reduced her available UIM coverage from $500,000 to $25,000 is unenforceable as a matter of Missouri public policy based on the rationale that drove the decisions in a line of Missouri cases concerning the stacking of UM and UIM coverages. *See Krombach*, 827 S.W.2d at 212; *Nolan*, 851 S.W.2d at 724; *Cornejo*, 866 S.W.2d at 177 ("The ambiguity created by . . . policy language treating uninsured and underinsured motorist coverage similarly[] requires that in accordance with public policy the underinsured motorist coverage be treated as uninsured motorist coverage and therefore be stacked."). In those cases, the courts struck provisions in automobile policies that sought to disallow the stacking of multiple UIM coverages because the policies had treated UM and UIM coverages identically. *Id.* The rationale in those cases was that since Missouri law mandates that an insured purchase UM coverage on every vehicle the insured owns, the public policy of this state is that an insured who has UM coverage on more than one vehicle may add those coverages together, i.e., stack, to increase the amount of UM coverage in the event the insured makes a UM claim under his or her policy. *Cameron Mutual Ins. Co. v. Madden*, 533 S.W.2d 538, 543–45 (Mo. banc 1976). That public policy does not apply, however, to UIM coverage because UIM coverage is not statutorily required. *Ritchie*, 307 S.W.3d at 135. So, automobile insurance policies may disallow stacking of UIM coverages as a simple matter of contract law. *Id.* However, when insurance policies combine their treatment of UM and UIM, as the Missouri Supreme Court held in *Krombach*, "[t]he same public policy that invalidates anti-

6

stacking provisions of [UM] coverage is equally applicable to [UIM] coverage *if the two are treated as the same in the insurance contract.*" 827 S.W.2d at 212 (emphasis added).

The situation presented here has little in common with those cases. The only thing this case has in common with that line of cases is that the Bankers Standard policy treated UM and UIM coverage the same. Otherwise, the public policy implications that drove the decision in *Krombach,* by way of example, are entirely absent here.

In fact, here the operation of these household exclusions is consistent with Missouri law because insurance policies that reduce coverage through a household exclusion to the minimum required by the MVFRL, which is what occurred here, are valid and consistent with public policy. *See Floyd-Tunnell,* 439 S.W.3d at 220; *Halpin v. Am. Family Mut. Ins. Co.,* 823 S.W.2d 479, 482 (Mo. banc 1992); *Progressive Northwestern Ins. Co. v. Talbert,* 407 S.W.3d 1, 6 (Mo. App. S.D. 2013) ("Beginning with *Halpin,* Missouri courts have repeatedly found household exclusion clauses are valid as to any coverage exceeding the amounts mandated by the MVFRL."). Provided that an exclusion does not run contrary to public policy, "the clear language of the contract prevails." *Rodriguez v. Gen. Acc. Ins. Co. of Am.,* 808 S.W.2d 379, 383–84 (Mo banc. 1991).

Point I is denied.

## *II. Mrs. Mendelson's ambiguity claim.*

In her second point, Mrs. Mendelson argues that because the Policy grants $500,000 in UIM coverage but then purports to reduce that coverage to $25,000 by way of the UIM household exclusion, the Policy is fatally ambiguous rendering the exclusion unenforceable. She relies principally on *Rice v. Shelter Mutual Ins. Co,* 301 S.W.3d 43, 46 (Mo. banc 2009). We

7

disagree because (1) we find *Rice* to be readily distinguishable from the case at bar, and (2) the policy is not ambiguous in this regard.

Ambiguity exists in an insurance policy "if the language used is reasonably open to different interpretations or where there is duplicity, indistinctiveness, or uncertainty in meaning." *Simmons v. Farmers Ins. Co., Inc.*, 479 S.W.3d 671, 673 (Mo. App. E.D. 2015). "[A] contract that promises something at one point and takes it away at another is ambiguous." *Id.* If the policy is ambiguous, we construe it against the insurer which wrote the policy and in favor of the insured. *Miller*, 400 S.W.3d at 784. However, "it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits." *Simmons*, 479 S.W.3d at 673 (quoting *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983)).

Words, phrases, and provisions in an insurance contract must be examined in the context of the policy as a whole and are not to be interpreted in isolation. *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 121 (Mo. App. W.D. 2011). When construing policy terms, we apply the meaning that an ordinary purchaser of insurance would understand by that language. *Simmons*, 479 S.W.3d at 673. "Definitions, exclusions, conditions[,] and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Floyd-Tunnell*, 439 S.W.3d at 221 (citation omitted). Limitations and exclusions are a common feature of insurance contracts—their mere existence does not automatically render a policy ambiguous. *See Geico Casualty Company v. Clampitt*, 521 S.W.3d 290, 293 (Mo. App. E.D. 2017).

In *Rice*, the Missouri Supreme Court found an insurance policy ambiguous because "it grant[ed] coverage in one provision and limit[ed] it in another." 301 S.W.3d at 49. There, the policy included "a partial exclusion limiting UM coverage to the statutory minimum and another

8

provision making any UM coverage exceeding the statutory minimum fully enforceable."

*Floyd-Tunnell*, 439 S.W.3d at n.8. The Court resolved these "entirely inconsistent" and

irreconcilable provisions in favor of the insured. *Rice*, 301 S.W.3d at 49.

The circumstances in *Rice* are not like those here. The Policy here does not grant

coverage with one hand and then take it away with another. Rather, the Policy provides UIM

coverage subject to applicable limitations appearing elsewhere in the policy which is a standard

practice in insurance contracts. *Floyd-Tunnell*, 439 S.W.3d at 221. The declarations page, just

above where the $500,000 in combined UM/UIM coverage is listed, states that the complete

policy consists of the declarations page, the policy itself, and any endorsements. The Policy's

introductory section titled "HOW TO USE THIS POLICY" states as follows:

> In this policy, *we* tell *you* about the *occurrences* and losses *we* **won't** pay for instead of the ones *we* will pay for.
> When *we* tell *you* about each coverage, *we* describe certain circumstances when *we* won't pay. *We* call these circumstances *exclusions. You* are covered against risks of *direct loss* not mentioned in these *exclusions*.
> Under "Your Property Coverage," *we* tell *you* these *exclusions* in sections called "Losses We Won't Pay For." Under "Your Liability Coverage," *we* tell *you* these *exclusions* in sections called "Damages We Won't Pay."

Consistent with this instruction, the "DAMAGES WE'LL PAY" section under the

"UNINSURED/UNDERINSURED MOTORISTS COVERAGE" heading reads:

> *Your* uninsured motorists coverage applies to any kind of *vehicle accident*, except under certain circumstances listed in the next section.

In the next section called "DAMAGES WE WON'T PAY," the UIM household exclusion

quoted above appears.

We conclude that an ordinary insurance consumer reading the Policy would understand

their coverage to be subject to the limitations listed elsewhere in the Policy. The policyholder is

instructed to anticipate these limitations and where to locate them. Unlike in *Rice*, the Policy

9

does not unequivocally grant $500,000 in UM/UIM coverage with no strings – or exclusions – attached only to then "take away" that coverage elsewhere.

We turn now to Mrs. Mendelson's contention that the Policy is ambiguous because the household exclusion is absent from the "DAMAGES WE WON'T PAY" section of the UM/UIM portion of the Policy. This assertion is inaccurate. The UIM household exclusion was added to the UM/UIM portion of the Policy by the Missouri Auto Endorsement.

Lastly, Mrs. Mendelson argues that the Policy is ambiguous because the UIM household exclusion appears in the definitions section only. This again is not accurate because, as stated, the exclusion also appears in the "DAMAGES WE WON'T PAY" section.

Point II is denied.[6]

### Conclusion

The judgment of the trial court is affirmed.

James M. Dowd, Judge

Michael E. Gardner, C.J and
Lisa P. Page, J. concur.

---

[6] "[A]ppellate review of a decision to grant summary judgment is limited to the issues put before the trial court." *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. E.D. 2014) (internal quotation omitted). Accordingly, we are "confined to addressing only those issues properly raised in the defendant's motion for summary judgment and the responses thereto." *Id.* (quoting *Heffernan v. Reinhold*, 73 S.W.3d 659, 663 (Mo. App. E.D. 2002)). Therefore, we do not address whether the Policy may be ambiguous in light of (1) the Policy's failure to italicize the word "uninsured" under the "Definition of an insured vehicle" section of the UM/UIM portion of the Policy or (2) the fact that the UIM household exclusion referenced "liability coverage" as opposed to, more appropriately, "UM/UIM coverage."

10