**Mark BARRON, Shauna Barron, Kennadi Barron, Christy Barron, Cameron Smith–Barron, and Richard Allen, Respondents,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Appellant.**

**No. WD 65947.**

Missouri Court of Appeals,
Western District.

Aug. 21, 2007.

---

William Clayton Crawford and Jack W. Green, Kansas City, for appellant.

Benjamin S. Creedy, St. Joseph, for respondent.

PAUL M. SPINDEN, Judge.

The plaintiffs [1] in this lawsuit dismissed their personal injury and wrongful death lawsuit and filed this declaratory judgment action against Shelter Mutual Insurance Company, the insurer of the defendants in the original lawsuit, Rodney Oglesby and Billy Hunt. They did not name Oglesby or Hunt as defendants in this action.

The underlying facts of the case are not in dispute. The issue of Shelter's liability emerged from a 2002 boating accident on Lake Pomme De Terre in Hickory County. The accident occurred when Oglesby, Shelter's insured, crashed his fishing boat into a pontoon boat while competing in a night time fishing tournament. Two persons on the pontoon boat died from injuries sustained in the accident.[2] The plaintiffs sued

---

1. The plaintiffs were Mark and Shauna Barron and their child, Kennadi, Christy Barron and her child, Cameron, and Richard Allen.

2. Killed in the accident were Kain Barron, Mark and Shauna Barron's child, and Carissa Barron, Christy Barron's and Richard Allen's child.

Oglesby and Hunt, also insured by Shelter and a passenger on Oglesby's boat, for personal injury and for wrongful death.

Oglesby and Hunt had purchased homeowner's and boat owner's insurance from Shelter. The plaintiffs settled with Oglesby and Hunt, and Shelter agreed to pay $100,000 under Hunt's homeowner's policy and $300,000 under Oglesby's boat owner's policy. The plaintiffs, however, contended that additional coverage existed under Hunt's boat owner's policy and under Oglesby's boat owner's and homeowner's policies. As part of their settlement, the parties agreed that the plaintiffs would pursue this declaratory judgment action to determine whether or not Shelter was obligated to pay more under Oglesby's and Hunt's policies.

After the plaintiffs filed this declaratory judgment action, both parties moved for summary judgment. The circuit court granted the plaintiffs' motion for summary judgment and denied Shelter's motion.[3] Shelter filed this appeal. This court originally heard the case and dismissed it on the basis that the plaintiffs lacked standing to seek a declaratory judgment action in the circuit court. The plaintiffs appealed to the Supreme Court, which held that they did have standing to seek a declaratory judgment action. *Barron v. Shelter Mutual Insurance Company*, 220 S.W.3d 746, 748 (Mo. banc 2007). The case was remanded back to this court to resolve the appeal on its merits.

Our review of the circuit court's summary judgment is essentially *de novo*. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). For summary judgment to be proper, the circuit court must determine that the parties are not disputing any issue of material

fact and that the party seeking summary judgment is entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Finance*, 854 S.W.2d at 378. When we review an appeal of a summary judgment, we view the evidence in a light most favorable to the nonmoving party, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Finance*, 854 S.W.2d at 382. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

■ The parties are not disputing any material factual issues. They dispute only the correct interpretation of their insurance contract. Interpretation of an insurance contract is an issue of law, which we review *de novo*. *Missouri Employers Mutual Insurance Company. v. Nichols*, 149 S.W.3d 617, 625 (Mo.App.2004).

■ In its first point on appeal, Shelter asserts that the circuit court erred in entering summary judgment for the plaintiffs on Count I of their petition. In that count, the plaintiffs averred that $100,000 of liability coverage was available under Hunt's boat owner's policy. Shelter argues that a clause in the boat owner's policy unambiguously operated as an anti-stacking provision and barred their claim. Shelter claims that, because Hunt's homeowner's and boat owner's policies contained $100,000 limits and because Shelter had already paid out $100,000 to the plaintiffs on behalf of Hunt under his homeowner's policy, the anti-stacking provision in Hunt's boat owner's policy barred any other claim.

■ In interpreting an insurance contract, we read the contract as a whole to determine the parties' intent. *Id.* We give

---

**3.** Although the parties averred virtually the same facts in their respective motions for summary judgment, the circuit court denied Shelter Insurance's motion, partly, on the ground that the parties were contesting issues of material fact.

effect to that intent by enforcing the contract as written according to the plain and ordinary meaning of the contract's language. *Id.*

Hunt's boat owner's policy contained this provision:[4]

### PART I—LIABILITY

### 1. COVERAGE A—BODILY INJURY LIABILITY ...

**We** will pay on behalf of the **insured** all sums, within the limits of liability of these coverages, which the **insured** shall become legally obligated to pay as damages because of:

(a) **Bodily injury** sustained by any person ...

. . . .

caused by accident resulting from the ownership, maintenance, or use of the **described** property or **non-owned property**. . . .

### PART V—CONDITIONS

. . . .

### 5. OTHER INSURANCE IN THE COMPANY

With respect to any accident, death or loss to which this and any other insurance policy issued to you by us also applies, the total limit of **our** liability under all these policies won't exceed the highest applicable limit of liability or benefit amount under any one policy.

Shelter argues that Part V, Section 5, of its policy, the "other insurance in the company" provision, operated to prohibit stacking. This provision, it contends, limited the plaintiffs' recovery to the limits of any one policy issued to Hunt. Because the parties concede that Shelter had already paid out $100,000 to the plaintiffs under Hunt's homeowner's insurance policy, Shelter maintains that Part V, Section 5, barred any recovery under the boat owner's insurance policy. The plaintiffs do not dispute that, on its face, this provision is unambiguous and would seem to bar any claim against Shelter on Hunt's boat owner's policy. Rather, they contend that this provision becomes ambiguous when read in conjunction with Part I, Section 5.

This provision of Hunt's boat owner's insurance policy says:

### OTHER INSURANCE

If the **insured** has other insurance against a loss covered by this Part, **we** shall not be liable under this policy for a greater proportion of the loss than the limit of liability under this policy for the loss bears to the total limits of liability of all valid and collectible insurance against the loss. However, the insurance under COVERAGES A and B of this policy for **temporary substitute property** or **non-owned property** shall be excess insurance over any other valid and collectible insurance.[5]

The plaintiffs maintain that Hunt's action during the accident fit within the exception outlined in the last sentence of the "other insurance" provision because Hunt was using non-owned property when the accident occurred. They concede that this exception is found under the "other insurance" provision but, relying primarily on *Niswonger v. Farm Bureau Town and Country Insurance Company of Missouri*, 992 S.W.2d 308 (Mo.App.1999), they contend that this exception is broad enough to override the general anti-stacking provision found in Part V, Section 5.

Relying primarily on *Farm Bureau Town and Country Insurance Company of Missouri v. Hughes*, 629 S.W.2d 595 (Mo. App.1981), Shelter responds that the exception in the "other insurance" provision, which allows stacking in limited situations, applies only to insurance policies issued by other insurance companies. Shelter ar-

---

**4.** Emphasis was in the original.

**5.** Emphasis was in the original.

gues that it does not override the anti-stacking provision in Part V, Section 5.

We agree with the plaintiffs and believe that *Niswonger* governs this case. The *Niswonger* court was faced with the same issue. In that case, the policy's equivalent to Part V, Section 5 said:

OTHER AUTOMOBILE INSURANCE IN THE COMPANY—With respect to any occurrence, accident, death or loss to which this or any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit under any one such policy.

*Niswonger*, 992 S.W.2d at 314–15. The "other insurance" provision in *Niswonger* said:

In the event there is other like or similar insurance applicable to a loss covered by this endorsement, this company shall not be liable for more than the proportion which this endorsement bears to the total of all applicable limits. **However, any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is excess of any other similar insurance.**

*Id.* at 315 (emphasis in original). The *Niswonger* court concluded that the policy was ambiguous. It noted that the last sentence of the "other insurance" provision could be construed as superseding other policy provisions that might otherwise apply. *Id.* It noted that beginning the last sentence of the "other insurance" provision with "however" "suggests, and could easily be interpreted by a lay person to mean, ... that it *prevails and takes precedence over* the policy's prior anti-stacking language whenever the accident is one where the insured was occupying a non-owned vehicle." *Id.* at 316 (emphasis in original). The *Niswonger* court also agreed that the

exception could reasonably be interpreted as applying only to claims brought under an insurance policy issued by other companies. *Id.* Because the policy was susceptible to two equally reasonable interpretations, the court held that the insurance policy was ambiguous and construed it in favor of the plaintiffs to allow them to stack their policies. *Id.* at 315.

■ Shelter's "other insurance" and "other insurance in the company" provisions are nearly identical to those in *Niswonger*. Following the reasoning of *Niswonger*, we hold that the last sentence in the "other insurance" provision could reasonably be interpreted as overriding the general anti-stacking provision in the "other insurance in the company" provision. And, while Shelter may be correct that it is also reasonable to assume that the exception in the "other insurance" provision applies only to insurance policies issued by other companies, this does not help its claim because, when an insurance contract can be interpreted in two equally reasonable ways, we must construe the insurance contract against the drafter, who in this case was Shelter. *Krombach v. Mayflower Insurance Company*, 827 S.W.2d 208, 210 (Mo. banc 1992).

Shelter concedes that the language of its policy is similar to the policy in *Niswonger*, but it urges us to follow *Hughes*. In *Hughes*, the "other insurance in the company" provision said:

Other Automobile Insurance in the Company—With respect to any occurrence, accident, death, or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

*Hughes,* 629 S.W.2d at 596. The "other insurance" provision in *Hughes* said:

> If the insured has other automobile insurance affording benefits for medical expenses against a loss to which Coverage C of this policy applies, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy bears to the total applicable limits of liability of all such valid and collectible automobile insurance against such loss; provided, however, the insurance afforded under Coverage C of this policy with respect to a temporary substitute or non-owned automobile shall be excess insurance over any other valid and collectible automobile insurance affording benefits for medical expenses.

*Id.* at 597–98. The *Hughes* court held that the policy was not ambiguous. It reasoned, "Clearly, the excess insurance provision applies to insurance provided by a third party on an automobile not owned by the injured person, and not to policies in the same company, as specified by [the 'other insurance in the company' provision]." *Id.* at 598.

As the *Niswonger* court points out, however, the *Hughes* court reached its conclusion without "any analysis or explanation of its reasoning, apparently assuming that the proposition it found 'clearly' to be true was self-evident. It isn't." *Niswonger,* 992 S.W.2d at 317–18. We agree with the *Niswonger* court that *Hughes'* conclusion, without any reasoning, is unpersuasive and should not be followed in this case.

Undeterred by the lack of reasoning in *Hughes,* Shelter points out that the *Niswonger* court distinguished its case from *Hughes* on the basis that the language in its "other insurance" provision used the phrase "other similar insurance," while the "other insurance" provision in *Hughes*

used the phrase "other valid and collectible insurance." Shelter asserts that, because the "other insurance" provision in its policy used the phrase "other valid and collectible insurance" and was identical to the policy in *Hughes,* we should follow it and not *Niswonger.*

We are not persuaded that the use of the phrase "valid and collectible insurance" differentiates either our case or *Hughes* sufficiently from *Niswonger.* The *Niswonger* court did use this as a partial basis for distinguishing itself from *Hughes;* however, it was careful to say only that the phrase, "similar insurance," "might more readily be perceived ... as presenting a specific conflict" with a general anti-stacking provision. *Id.* at 317. It did not say that the phrase, "other valid and collectible insurance" rather than "other similar insurance," would render a policy unambiguous. In short, we find this an inadequate basis to follow *Hughes.*

■ In its second point, Shelter contends that the circuit court erred in entering summary judgment for the plaintiffs on Count II of their petition. In that count, the plaintiffs sought a judgment that Hunt was covered under Oglesby's homeowner insurance policy. Shelter maintains Hunt's actions expressly fall under the watercraft exclusion in Oglesby's homeowner insurance policy. We agree.

Oglesby's homeowner's policy said:

## COVERAGE E—PERSONAL LIABILITY

**We** will pay all sums arising out of any one loss which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** and caused by an **occurrence** covered by this policy.[6]

---

**6.** Emphasis was in the original.

The parties concede that, under Oglesby's homeowner's policy, Hunt was an insured and he caused bodily injury to the plaintiffs. Shelter claims, however, that Hunt's actions fall squarely within the homeowner's policy's exclusion for watercrafts, which said:

Under Personal liability and Medical Payments to Others, we do not cover:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment of:

. . . .

(d) watercraft not located on the **insured premises:**

. . . .

(3) powered by one or more outboard motors with more than 25 total horsepower owned by an **insured.**

(4) subdivisions (1), (2) and (3) do not apply if **you** write **us** within 30 days of the acquisition date of such items that **you** want coverage.[7]

The plaintiffs concede that Oglesby owned the boat involved in the accident and that it had a 150 horsepower outboard motor, seemingly putting Hunt's actions within the watercraft exclusion. They argue, however, that the undisputed evidence established that, within 30 days after Oglesby bought the boat, he applied for boat owner's insurance. This application for boat owner's insurance, they argue, was sufficient to trigger Subdivision 4, *supra.*

Shelter responds that Subdivision 4 applies only when the insured requests coverage under the homeowner's policy and not when he requests another type of insurance. The plaintiffs retort that Subdivision 4 did not say specifically that the insured must send in a written document requesting coverage under the homeowner's policy; thus, an assumption that a

written request for a boat owner's policy is sufficient to trigger Subdivision 4 is reasonable. To the extent that both interpretations are reasonable, the plaintiffs assert that the policy is ambiguous and must be construed in their favor.

Subdivision 4 did not create an ambiguity. The only reasonable construction of the policy language is that the writing had to request coverage under the homeowner's policy. That a written request for another type of insurance would be sufficient to invoke coverage under a completely different, pre-existing homeowner's insurance policy makes no sense. Thus, because Oglesby's request for boat owner's insurance was not sufficient to trigger Subdivision 4, the watercraft exclusion applied to exclude the plaintiffs' claim.

The circuit court, therefore, erred in entering summary judgment for plaintiffs on Count II. Because we have determined that the watercraft exclusion barred the plaintiffs' claim, the circuit court should have entered summary judgment for Shelter. We, therefore, reverse the circuit court's judgment. We remand for the circuit court to enter judgment for Shelter.

■ In its third point, Shelter contends that the circuit court erred in entering summary judgment for the plaintiffs on Count III of their petition. In that count, the plaintiffs sought a judgment that they could recover medical payments under Oglesby's boat owner's policy. Shelter maintains that, as a matter of law, they were not covered under the policy. We agree.

Oglesby's boat owner's policy said:[8]

**PART I—MEDICAL PAYMENTS**

**1. COVERAGE C—MEDICAL PAYMENTS**

---

7. Emphasis was in the original.

8. Emphasis was in the original.

**We** will pay all reasonable medical expenses which are incurred within three years from the date of the accident for necessary medical services for **bodily injury** to any **Insured** caused by accident. Medical services means medical, surgical, X-ray, and dental services, including prosthetic devices, and ambulances, hospital, professional nursing, and funeral services.

**2. PERSONS INSURED**

As used in this Part, **Insured** means:

(a) **You** or a **relative:**

. . . .

(b) Any other person:

. . . .

    (2) while **occupying** a non-owned boat, if the **bodily injury** results from **your** operation or occupancy, but only if **you** have or reasonably believe that **you** have the permission of the owner to use the boat, and **your** use is within the scope of such permission.

While the victims of the accident occupied a non-owned boat, their injuries did not result from Oglesby's operation of the boat. Rather, the undisputed evidence established that Oglesby was operating his own boat-not the pontoon boat. Hence, they are not insureds as defined in Section 2(b)(2).

The plaintiffs endeavor to escape this conclusion by claiming that the definition of insured in Section 2(b)(2) does not say specifically that the policy's holder must be operating or occupying the non-owned boat that the injured parties were occupying. In making this claim, however, the plaintiffs ignore the second part of the sentence. It is obvious from that language that coverage was available only if the policyholder was operating the non-owned boat that the injured party was occupying. Given this sentence, the plaintiffs' interpretation of the policy is plainly unreasonable. The policy did not cover their claim.

Because the undisputed evidence established that Oglesby was operating his own vehicle, rather than a non-owned vehicle, the circuit court erred in entering summary judgment on Count III. Because the victims of the accident were not insureds under Oglesby's boat owner's policy coverage for medical payments, the circuit court should have entered summary judgment for Shelter. Accordingly, we reverse the circuit court's judgment concerning Count III and remand for it to enter judgment for Shelter.

We, therefore, affirm the circuit court's summary judgment concerning Count I of the plaintiffs' petition. We reverse the circuit court's summary judgment concerning Counts II and III and remand for the circuit court to enter judgment concerning those counts for Shelter.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.